FILED BY _____ D.C.

96 SEP 30 PM 1:53

CLERK ...... SOUTHERN DISTRICT OF FLORIDA
S.D. OF FLA.-MIAMI

UNITED STATES DISTRICT COURT
For The
SOUTHERN DISTRICT OF FLORIDA

**96 - 7125**
**CIV - NESBITT**

**MAGISTRATE JUDGE**
**TURNOFF**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CIVIL ACTION NO. |
| Plaintiff, | |
| v. | COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF |
| JAMES S. FALLER II, and ROLAN COLON, | |
| Defendants. | |

It appears to Plaintiff, Securities and Exchange Commission ("Commission"), and it alleges that:

1.   Defendants James S. Faller II ("Faller") and Rolan Colon ("Colon") have engaged, and unless restrained and enjoined by this Court, will continue to engage in acts and practices which constitute and will constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5, thereunder [17 C.F.R. 240.10b-5].

2.   Pursuant to the authority granted by Sections 10(b) and 23(a) of the Exchange Act [15 U.S.C. 78j(b) and 78w(a)], the Commission has promulgated Rule 10b-5 [17



C.F.R. 240.10b-5]. Said rule was in effect at all times mentioned herein and is now in effect.

### JURISDICTION AND VENUE

3.    The Commission brings this action to enjoin such acts and practices pursuant to Section 20(b) of the Securities Act [15 U.S.C. 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. 78u(d)], and for other relief.

4.    This Court has jurisdiction of this action under Sections 20(c) and 22(a) of the Securities Act [15 U.S.C. 77t(c) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), and 78aa].

5.    Certain of the acts and practices constituting violations of the Securities Act and the Exchange Act have occurred within the Southern District of Florida, and were perpetrated through the use of the mails and the means and instrumentalities of interstate commerce. Upon information and belief, defendant Colon resides within the Southern District of Florida.

### THE DEFENDANTS

6.    James S. Faller II is a resident of Augusta, Georgia.

7.   Rolan  Colon  conducts  business  from  Hialeah,
Florida.

### OTHER PERSONS INVOLVED

8.   Evro   Corporation   ("Evro")   is   a   Florida
corporation,  headquartered  in  Tampa,  Florida.   Evro's
stock  is  traded  on  NASDAQ.   Evro  is  registered  with  the
Commission  pursuant  to  Section  12(g)  of  the  Exchange  Act.

9.   Jerry  Diamond  ("Diamond"),  during  the  relevant
period  of  time,  was  president  and  chief  executive  officer
of  Evro.

10.   International  Business  Service  Alliances  of
Tampa,  Inc.  ("IBSA")  was,  during  the  relevant  period,  a
Florida  corporation.   It  was  dissolved  administratively
on  August  26,  1994.   Faller  was  president  and  Colon  was
vice-president  of  IBSA.   Faller  ran  an  IBSA  office  in
Tampa,  Florida  and  Colon  ran  an  IBSA  office  in  Fort
Lauderdale,  Florida.

11.   Richard  Adam  ("Adam"),  during  the  relevant
period  of  time,  was  affiliated  with  IBSA,  Faller  and
Colon.   Adam  was  represented  to  be  able  to  arrange
financing  for  companies  in  need  of  cash  from  European
trusts.   He  was  engaged  as  a  consultant  to  Evro  as  a

3

result of negotiations between Daimond on behalf of Evro
and Faller and Colon on behalf of IBSA.

FACTS

12.    During 1993, Evro was primarily involved in
developing and attempting to sell equipment used to
detect breast abnormalities without the use of X-rays.
It also operated recreational vehicle parks.

13.    In or about March 1993, Faller, as president
of IBSA, contacted Evro and represented that IBSA could
obtain millions of dollars in financing for Evro from a
European trust.

14.    Faller represented to Evro that Adam was a
person who had contacts with various entities in Europe
through which IBSA could obtain loans for American
companies in need of cash.

15.    On or about May 10, 1993, Evro entered into an
agreement with Colon and Adam pursuant to which Colon and
Adam, or their assignees, were to act as consultants for
Evro to obtain a $30 million loan net to Evro and funds
to purchase $225 million of "Top 100 Prime Bank
Guarantees." The Guarantees allegedly were to be used as
collateral for the loan.

4

16.   In return for the services to be rendered by Faller, Colon, Adam, or their assignees, Evro issued approximately 300,000 shares of common stock to Adam. The stock certificate bore a restrictive legend prohibiting its transfer unless certain conditions were met.   Evro also agreed to pay the consultants three percent of any loan proceeds obtained.

17.   The agreement Evro entered into with Colon and Adam provided that all information provided to the consultants constituted "material representations." The consultants agreed "to preserve and protect the confidentiality" of information relating to Evro's financial condition.   The agreement also stated: "Essentially the spirit behind the agreement is one of mutual trust and confidence, and of the reliance on each other to do what is fair and equitable."

18.   The conditions set forth in the agreement were understood by the parties and Faller as also applying to Faller and anyone else associated with the consultants.

19.   The agreement created a fiduciary duty running from the consultants and their associates, including Faller, to Evro and its shareholders, pursuant to which the consultants and their associates obtained information

5

which was to be kept confidential by them and only used in connection with the business purposes of Evro.

20.   Faller sent a letter to Diamond on or about July 14, 1993, stating that a "bankable" loan commitment would be issued soon.  At about the same time, Faller suggested that Evro should issue a press release announcing the funding.  Faller was told that Evro should receive a written commitment before making any announcement.

21.   On or about August 18, 1993, Diamond received a purported $30 million loan commitment from what was represented to be a Liechtenstein entity named the Multika Trust Reg. The purported commitment was signed by Adam, among others.

22.   On or about August 18, 1993, Faller was in Europe.  He discussed the loan commitment with Dominick F. Maggio ("Maggio"), who was requested to draft a press release.  Maggio had been employed by Evro Corporation but in August 1993 was operating independently.  Maggio wrote the press release. Pursuant to Faller's direction, a copy of the press release was sent to Faller in Europe for his review and approval.  Faller approved the proposed release.  At Faller's direction, a copy of the

release was then faxed to Colon in Fort Lauderdale, Florida, for Colon's review.  The press release was then sent by Maggio to Diamond, who approved it.

23.   Faller and Colon, at the time the press release was sent to Diamond, knew that the purported loan commitment was fictitious.

24.   On or about August 19, 1993, Faller, under the pseudonym of Jarret Rouge, and Colon, under his own name, opened accounts at Paragon Securities, Inc. ("Paragon"), a registered securities broker-dealer.

25.   On or about August 20, 1993, Faller and Colon each purchased 20,000 shares of common stock of Evro at $0.795 per share through their accounts at Paragon for $15,908.25.  Payment for the Evro stock purchased in the Rouge account was made by a wire transfer from a bank account belonging to Faller.

26.   On or about August 23, 1993, Evro issued the press release announcing that it had obtained a $30 million financing commitment.  The press release further claimed that the funding would give Evro the financial strength to implement a business plan, and, among other things, test a new product.

27. The press release had an immediate and positive impact on the price and volume of trading in Evro's common stock. The volume increased from approximately 100,000 shares per day during the week before the announcement to over 300,000 shares per day during the two weeks after the announcement. Likewise, the price rose from a closing price of $0.84375 on August 23, 1993, to a closing price of $1.875 on September 3, 1993.

28. On or about August 31, 1993, Faller sold 6,057 of his shares of common stock of Evro Corporation at the price of $1.12850 per share. He sold the remaining 13,943 of his shares of common stock of Evro Corporation on or about September 1, 1993, at the price of $1.15625 per share. Faller received $22,940.41 for his 20,000 shares of common stock of Evro Corporation, or approximately forty percent more than he had paid for them. The dollar amount of Faller's profit was approximately $7,032.

29. On or about September 3, 1994, Colon sold his 20,000 shares of common stock of Evro Corporation for $1.50 per share. He made a profit of approximately $13,677.

8

30. Neither Faller nor Colon has ever made another trade in his account with Paragon.

31. No funds were ever provided to Evro by the Multika Trust Reg., despite repeated requests by Evro through Diamond. In March, April and May 1994, Diamond received letters purportedly written by an attorney in Coral Springs, Florida, claiming to represent IBSA. These letters, one of which was faxed from Colon in the Southern District of Florida to Diamond, continued to represent that the funding had been approved.

32. On March 31, 1994, Colon faxed a letter from himself in Fort Lauderdale, Florida to Diamond, describing the current status of the transaction and claiming that the loan contract would be executed "next week."

33. Faller and Colon knowingly and intentionally caused Evro Corporation to issue a materially false press release announcing the receipt of a commitment for $30 million in funding for Evro Corporation thereby causing the market for the common stock of Evro to materially increase in price and volume, all to the detriment of purchasers of the common stock of Evro Corporation.

34.    Faller and Colon, on or about August 20, 1993, while in possession of material non-public information concerning the impending press release of Evro Corporation announcing a $30 million loan commitment, which information they had obtained during the course of their employment by Evro Corporation, in breach of a fiduciary duty or other relationship of trust and confidence improperly used that material non-public information and bought, through their accounts at Paragon, 20,000 shares of Evro Corporation common stock and thereafter sold the stock, as described in paragraphs 24, 25, 28 and 29, for a profit.

## COUNT I

### Violations of Section 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. 77q(a)(2), and 77q(a)(3)

35.    Paragraphs 1 through 34 are hereby realleged and are incorporated herein by reference.

36.    From in or about August 1993 through in or about September 1993, defendants Faller and Colon, singly and in concert, in the offer and sale of Evro common stock by use of means and instruments of transportation

10

and communication in interstate commerce and by use of
the mails, directly and indirectly:

    (a)   obtained money and property by means of
untrue statements of material facts and
omissions to state material facts
necessary in order to make the statements
made, in the light of the circumstances
under which they were made, not
misleading; and

    (b)   engaged in transactions, practices, and
courses of business which operated and
would operate as a fraud and deceit upon
the purchasers of such securities, all as
more particularly described in paragraphs
1 through 34 above.

37. By reason of the foregoing, defendants Faller
and Colon have violated, and, unless restrained and
enjoined, will continue to violate Sections 17(a)(2) and
17(a)(3) of the Securities Act [15 U.S.C. 77q(a)(2) and
77q(a)(3)].

<u>COUNT II</u>

Violations of Sections 17(a)(1) of the
<u>Securities Act [15 U.S.C. 77q(a)(1)]</u>

38. Paragraphs 1 through 34 are hereby realleged and are incorporated herein by reference.

39. From in or about August 1993 through in or about September 1993, Faller and Colon, singly and in concert, in the offer and sale of Evro common stock by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly, employed devices, schemes, and artifices to defraud purchasers of such securities, all as more particularly described in paragraphs 1 through 34 above.

40. Defendants Faller and Colon knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes, and artifices to defraud.

41. By reason of the foregoing, defendants Faller and Colon have violated, and, unless restrained and enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. 77q(a)(1)].

<u>COUNT III</u>

Violations of Section 10(b) of the Exchange Act
[15 U.S.C. 78j(b)] and Rule 10b-5 Thereunder
[17 C.F.R. 240.10b-5]

43.   Paragraphs 1 through 34 are hereby realleged and are incorporated herein by reference.

44.   From in or about August 1993 through in or about September 1993, defendants Faller and Colon, singly and in concert, in connection with the purchase and sale of Evro common stock, by the use of means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

> (a)   employed devices, schemes, and artifices to defraud;
>
> (b)   made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and
>
> (c)   engaged in acts, practices, and courses of business which operated as a fraud and deceit upon persons all as more

particularly described in paragraphs 1
through 30 above.

45.  Defendants   Faller   and   Colon   knowingly,
intentionally, and/or recklessly engaged in the above-
described conduct.

46.  By reason of the foregoing, defendants Faller
and Colon have violated, are violating, and, unless
restrained and enjoined will continue to violate Section
10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule
10b-5 thereunder [17 C.F.R. 240.10b-5].

WHEREFORE,   Plaintiff   Securities   and   Exchange
Commission respectfully prays for:

### Section 17(a) of the Securities Act [15 U.S.C. 77q(a)]

1.   Permanent injunctions restraining and enjoining
defendants Faller and Colon, their officers, agents,
servants, employees, attorneys, and those persons in
active concert or participation with them who receive
actual notice of the order of injunction, and each of
them, whether as principals or as aiders and abettors, in
the   offer   or   sale   of   the   common   stock   of   Evro
Corporation, or any other security, by the use of any
means or instruments of transportation or communication

14

in interstate commerce or by the use of the mails, from, directly or indirectly:

    (a)   employing any device, scheme, or artifice to defraud;

    (b)   obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)   engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any purchaser of such securities.

Section 10(b) of the Exchange Act
[15 U.S.C. 78j(b)] and Rule 10b-5
Thereunder [17 C.F.R. 240.10b-5]

2.    Permanent injunctions restraining and enjoining defendants Faller and Colon, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order of injunction, and each of

15

them, whether as principals or as aiders and abettors, in connection with the purchase or sale of the common stock of Evro Corporation, or any other security, by the use of any means or instrumentality of interstate commerce or of the mails, from directly or indirectly:

    (a)    employing any device, scheme, or artifice to defraud;

    (b)    making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person.

### Additional Equitable Relief

3.    An order directing that Faller and Colon disgorge all profits received, directly or indirectly, from the sale of the common stock of Evro Corporation, plus interest, to deprive the defendants of any unjust enrichment.

16

4.   Findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

5.   Such other and further relief as this court may deem just, equitable, and appropriate in connection with the enforcement of the federal securities laws and for the protection of investors.

Respectfully submitted,

Dated:  ___9/3___ , 1996.


_____
WILLIAM B. HICKS
Florida Bar No. 337641
Telephone:    (404) 842-7675


_____
JOSEPH L. GRANT
Illinois Bar No. 01034340
Telephone:    (404) 842-7660

Counsel for Plaintiff
Securities & Exchange Commission
3475 Lenox Road, N.E.
Suite 1000
Atlanta, Georgia  30326-1232

17

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

U.S. Securities & Exchange Commission

**96-7125**
**CIV - NESBITT**

MAGISTRATE JUDGE
TURNOFF

## DEFENDANTS

James S. Faller II
Rolan Colon

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

A-Brow-96CV7125-Nesbitt- Turnoff

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Richmond
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William P. Hicks & Joseph L. Grant
U.S. Securities & Exchange Commission
3475 Lenox Rd, NE, #1000, Atl. Ga. 30326
(404) 842-7675 (404) 842-7660
**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

ATTORNEYS (IF KNOWN) Hanzman, Criden, Korge, Hartzberg
and Chaykin, First Union Center, Ste. 2100,
200 S. Biscayne Blvd., Miami, Fl 33131
(305) 579-1222 and Rosen Law Ofce, 100 N.
Biscayne Blvd., #2910, Miami, FL 33132

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- [X] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Action by the SEC pursuant to 15 U.S.C. Section 77q(a) and 15 U.S.C. Section 78j(b) and 17 C.F.R. 240.10b-5. Defendants traded securities of Evro Corporation, a public company, while in possession of material non-public information in violation of fiduciary duty owed to corporation and shareholders.

days estimated for both sides to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | A FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **A PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [X] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **B SOCIAL SECURITY** | [X] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **A LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A' CIVIL RIGHTS** | **B PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [X] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Refiled
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
[ ] UNDER F.R.C.P. 23

**DEMAND $** injunction, disgorgement, I

Check YES only if demanded in complaint:
**JURY DEMAND:** [ ] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 9/3/96

SIGNATURE OF ATTORNEY OF RECORD William P. Hicks

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. _____ Amount: _____

Date Paid: _____ M/ifp: _____